UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PHILLIP REMEL and BARBARA REMEL                         PLAINTIFFS

V.                                          CIVIL ACTION NO.1:07CV126 LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY
and UNKNOWN DEFENDANTS                                  DEFENDANTS

## MEMORANDUM OPINION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court has before it Defendant State Farm Fire and Casualty Company's (State Farm) motion [112] for partial summary judgment. This motion addresses the following claims:

1. Negligence and Gross Negligence (Count 1 of the Complaint)
2. Breach of Fiduciary Duty (Count 3 of the Complaint)
3. Bad Faith Refusal to Pay (Count 5 of the Complaint)
4. Intentional Infliction of Emotional Distress (Count 6 of the Complaint)
5. Fraudulent Misrepresentation and/or Omission (Count 7 of the Complaint)
6. Negligent Misrepresentation and/or Omission (Count 8 of the Complaint)
7. Estoppel (Count 9 of the Complaint)
8. Valued Policy Statute Claim (Count 12 of the Complaint)
9. Reformation based on "Equitable Fraud" (Count 15 of the Complaint)
10. Specific Performance (Count 16 of the Complaint)
11. Extra-contractual and Punitive Damages (Count 17 of the Complaint)

This motion does not address the plaintiffs' claims for breach of contract (Count 4 of the Complaint), for State Farm's failure to properly train its agents (Count 10 of the Complaint), for equitable relief under the umbrella of "Indemnity" (Count 14 of the Complaint), and for Declaratory Relief (Counts 11 and 13 of the Complaint).

### Undisputed Facts

Plaintiffs Phillip and Barbara Remel (the Remels) own residential property situated at 126 Leopold Street, Bay St. Louis, Mississippi. This property was damaged during Hurricane Katrina. At the time of the storm, the Remels' property was insured under two policies:

State Farm's homeowners policy number 24-06-8685-3 provides limits of coverage of $444,700 (Dwelling), $24,400 (Dwelling Extension), $83,775 (Personal Property) and coverage for loss of use.  This policy provides coverage for damage from windstorms, and it excludes coverage for flood damage.  State Farm has tendered $31,400.04 in benefits under this homeowners policy for damage to the plaintiffs' dwelling and garage.

State Farm policy number 24-D4-5567-9 is a flood insurance policy providing limits of coverage of $104,300 (Dwelling) and $44,800 (Personal Property).  The limits of coverage under the flood policy have been paid, and that policy is not at issue in this litigation.

Plaintiff filed this action in the Circuit Court of Hancock County, Mississippi, against both State Farm and one of its local agents, Felecia Craft Palmer (Palmer).  The defendants removed the action to this court on grounds of diversity of citizenship and the requisite amount in controversy.  Plaintiffs' motion to remand was denied, and the plaintiffs' claims against Palmer (in Count 2 and other parts of the Complaint) were dismissed.  These rulings appear at docket numbers [48] and [49].

### Allegations of the Complaint: Pre-Storm and Post-Storm Misconduct

Many of the allegations in the Remels' thirty-four page complaint are based on the claim that State Farm owed the Remels a duty to select or recommend the proper types and amount of insurance coverage for them.  Other allegations concern conduct by the State Farm representatives who evaluated the Remels' claim and made decisions on the merits of the claim.  Thus, there are allegations of State Farm's pre-storm misconduct in the context of selling the Remels their insurance coverage, and there are allegations of State Farm's post-storm misconduct in adjusting the plaintiffs' claims.  In this opinion I will address only the Remels' claims concerning State Farm's post-storm conduct.  I have addressed the Remels' claims concerning State Farm's pre-storm conduct in a separate opinion that will be entered today.

### Post-Storm Claims for Negligence, Misrepresentation and/or Omissions

The issues concerning State Farm's post-storm conduct center on the question of whether State Farm exercised reasonable care in evaluating the Remels' claim under their homeowners policy and whether State Farm arrived at its decisions concerning the merits of the Remels' claim in good faith and for legitimate or arguable reasons.  If State Farm exercised reasonable care and acted in good faith, it may still have made a decision that ultimately proves to be incorrect or at least inconsistent with a jury's evaluation of the evidence concerning the merits of the Remels' claim.  If that is the case, State Farm would owe the Remels the amount the jury determines to be due under the terms of the homeowners policy–with some additional payment of interest, cost, and litigation expenses–if the evidence supports such additional assessments.

The Remels' extracontractual claims for negligence and bad faith based on State Farm's claims-handling practices are now before the Court in the context of State Farm's motion for partial summary judgment. As the moving party, State Farm has assumed the burden of proving that there are no genuine issues of material fact left to be decided and that it is entitled to judgment as a matter of law.

The Remels have responded to State Farm's motion by submitting excerpts from the State Farm adjusting file on their property. From these excerpts we learn the following facts:

1. The first page of the claims file (Bates numbered 100002) indicates that the Remels' property damage was reported as: "HURRICANE KATRINA, TREE FELL ON THE ROOF, HOME COMPLETELY COLLAPSED." The "probable cause" is identified as "WINDSTORM" and the severity is described as "UNINHABITABLE." The source of this information is not apparent from the face of this document.

2. The page of the claims file Bates numbered 100005 indicates that the Remels' property was inspected on November 4, 2005, and reinspected on January 25, 2006. The claims file was closed on February 12, 2006, and the file was "REOPENED 03-12-07."

3. Entries in the "Activity Log" begin on September 12, 2005 (entry 2 at Bates numbered 100022). On September 20, 2005 (entry 9) the log reflects: "THE RISK IS ON THE GROUND WITH A TREE ON THE ROOF. HE ALSO HAD FLOOD IN THE AREA. EXPLAINED COVERAGE A, COVERAGE B, COVERAGE C AND THE DEDUCTIBLE. SCHEDULED TO INSPECT ON 9/26 @0800."

4. The entry for September 26, 2005 (entry 11 at Bates numbered 100021) states: "MET WITH MR. & MRS. INSUREDS @ RISK @ 0800. ADVISED THAT CLAIM WOULD BE MOVED TO THE FLOOD ADJUSTER TO HANDLE BOTH CLAIMS."

5. The entry for October 20, 2005 (entry 15 at Bates numbered 100021) states: "On 9/26/05 went to loss location, met with Mr. Remel and conducted visual inspection. Inspection revealed a tree on outbuilding and no visible wind damge [sic] to dwelling. . . . Discussed file with TM and ordered an engineer. Awaiting the engineer report to proceed further [sic]."

6. The entry for October 21, 2005 (entry 16 at Bates numbered 100021) states: "This file cannot be completed until engineer report is done. When it is complete recommend pay insured for tree dmaged [sic] to outbuilding and possibly 14 days prohibitive use if approved by TM. . . ."

7.  The entry for October 28, 2005 (entry 18 at Bates numbered 100020) states: "Reassigned to Tammy Hardison to follow up with insured and deny flood. NO engineer is assigned to this claim."

8.  The entry for November 4, 2005 (entry 21 at Bates numbered 100020) states: "Inspected loss all damages appear to be from surge. All houses on street appear damaged from surge. Called NI on number provided LMOM w/contact info. NI recieved [sic] an advance $2,500 under this claim. Appears no ALE is warrented [sic] since all damage is due to non coverd [sic] loss."

9.  The entry for November 7, 2005 (entry 22 at Bates numbered 100020) states: "Per management, called & spoke with Mr. Remel and explained the damage to his property was due to surge/flood water which is not a coverd [sic] loss under his HO policy. Mr. Remel did not agree and said that he believes that someone is not telling the truth. He said he met with the engineer and the engineer told him that his damage was due to wind. Cr [sic] asked Mr. Remel if he had anything in writing from the engineer and he said he does not. CR explained that the damage in that area was due to surge and that he would receive a denial letter in the mail. Call ended then CR called Mr. Remel back and left message requesting name of engineering firm and/or name of engineer. CR has not received a [sic] engineer report for this claim.

10. The entry for November 7, 2005 (entry 23 at Bates numbered 100020) states: "Sending denial letter. Please close file."

State Farm requested an engineering report from Jade Engineering (Jade) on September 28, 2005. (Request for Engineer [127-2]) State Farm sent the plaintiffs a letter denying their claim on November 7, 2005. Jade's engineering report was not delivered to State Farm until December 5, 2005.

I need go no further in the claim file to see that a final decision to deny the plaintiffs' claim was made before the State Farm adjustor in charge of the file received the engineering report State Farm had requested. (entry 15 at Bates numbered 100021) While there may be a valid reason for this decision having been made, the fact that it was made–while an engineering report had been requested and not yet received–is sufficient evidence to create a genuine issue of material fact on the questions of whether State Farm was acting with reasonable care and operating in good faith.

Accordingly, I will deny the State Farm motion with respect to its post-storm conduct under the plaintiffs' theories of recovery for negligence and bad faith. An appropriate order will be entered.

**DECIDED** this 25th day of February, 2009.

>  s/ L. T. Senter, Jr.
>  L. T. SENTER, JR.
>  SENIOR JUDGE